Kendall v. Garneau.

BURNEY J. KENDALL V. JOSEPH GARNEAU, JR.

FILED JUNE 9, 1898.  No. 8150.

| 55 | 403 |
| s58 | 56 |
| 55 | 403 |
| s61 | 397 |

1. **Statutes:** CONSTRUCTION OF LANGUAGE: PRESUMPTION.  When the legislature, in a statute, employs language which has elsewhere received a fairly well settled construction, it will be presumed that such construction was in the contemplation of the legislature, and expresses the true meaning.

2. **Statute of Frauds:** VERBAL AGREEMENTS: PERFORMANCE.  That portion of our statute of frauds which brings within its inhibition verbal or unsubscribed agreements which by their terms are not to be performed within one year from the time of making, does not extend to agreements wholly performed on one side within the year.

3. ———: ———: ———.  Whether there is ground for a distinction between executory contracts contemplating performance on one side within a year, and contracts actually executed on one side within that time, quære.

4. **Unsubscribed Deed:** COVENANT TO PAY MORTGAGE.  The grantee in a deed, although he does not subscribe the same, is bound by a covenant to pay a mortgage not due for more than a year after the delivery of the deed.  RAGAN, C., dissenting.

5. **Review:** ORDER REMANDING CAUSE: DISREGARDING STIPULATION.  The parties had stipulated that if a judgment for the defendant should be reversed, this court should render judgment for a stipulated amount in favor of plaintiff.  It being made to appear that subsequent proceedings had been had which might in whole or in part avoid the obligations of the stipulation, the court refused to enter judgment according to the stipulation, and remanded the case that the district court might hear and determine the questions so suggested.

ERROR from the district court of Douglas county. Tried below before BLAIR, J.  *Reversed.*

*Albert Swartzlander*, for plaintiff in error.

*Joel W. West* and *H. J. Davis, contra.*

IRVINE, C.

Kendall, in his amended petition against Garneau, alleged that December 11, 1890, the Patrick Land Com-

pany sold and conveyed to Charles F. Mullin twenty-four
lots of land, and that to secure the purchase-money Mullin that day made and delivered to the land company his
twenty-four promissory notes, each payable December
11, 1893, each for $600, and each secured by a mortgage
on one of the lots; that these notes had become the property of the plaintiff; that February 23, 1891, Mullin conveyed said lots to Garneau by deed-poll, incorporated in
the petition, containing the following covenant: "Subject
to incumbrances amounting to $14,400, which the said
Joseph Garneau, Jr., hereby assumes and agrees to pay,
and the interest thereon from December 11, 1890." It
was further alleged that the incumbrances mentioned in
said covenant were the mortgages securing plaintiff's
notes, and that said notes were due and unpaid. Judgment was prayed for their amount. A general demurrer
to this petition was sustained and a judgment of dismissal entered.

It will be observed that the notes were not payable for
more than one year after the conveyance to Garneau,
and that that deed was not subscribed by the grantee.
The question raised by the demurrer is whether such a
transaction is within the first subdivision of section 8,
chapter 32, Compiled Statutes, which provides: "In the
following cases every agreement shall be void unless
such agreement, or some note or memorandum thereof,
be in writing, and subscribed by the party to be charged
therewith: First—Every agreement that by its terms is
not to be performed within one year from the making
thereof." It is contended that the liability of the
grantee under similar circumstances has been settled by
repeated adjudications. An examination of the cases
will disclose that the propositions so far decided have
been that a third person for whose benefit a promise is
made may sue thereon, although he be not a party to the
consideration; and that such a promise is a principal undertaking, and so not within that provision of the statute
of frauds which requires a writing in order to charge

one on a promise to answer for the debt, default, or mis-
doings of another. In some cases it affirmatively ap-
pears that the debt became due or that it was in terms
payable within the year. In only one does the contrary
appear, and in none has the provision we are now called
upon to consider been invoked, or its application con-
sidered. In ascertaining whether this provision applies,
the determining question is whether the statute contem-
plates an agreement which by its terms is not to be com-
pleted within the year, or only those which are not to be
performed on either side within that period. If the
latter, it is not here applicable, because the conveyance
was made at once and only payment by the promisor was
postponed beyond the year.

Were we at liberty to base our construction upon what
seems the natural and ordinary meaning of the language
employed, the solution ought not to be difficult. As
stated by Lord Ellenborough in *Boydell v. Drummond,* 11
East [Eng.] 142, "performed" means completely per-
formed. It means done, not begun or half done. The
policy of the statute was to prevent the evidence of such
contracts from resting in the uncertain memory of wit-
nesses for so long a time. A half performance would
not satisfy this object. But the language of the statute
is not altogether certain, and we have, from another rule
of construction, a guide to the intent of the legislature.
Our statute was first enacted in 1856. (Session Laws, ch.
33.) It was re-enacted in 1864. (Session Laws, p. 70.)
From its closely following in the main the statute of
Charles II, and from the changing of some words which
had created difficulty in the construction of that statute,
and the addition of certain sections rendering explicit
matters which were left by the English statute in doubt,
it is quite evident that it was carefully prepared,
with a view to the many decisions construing the origi-
nal act and the earlier American acts founded thereon.
If the words used had at the time received a settled con-
struction, we must presume that the legislature adopted

them in that sense. *Boydell v. Drummond* was decided in
1809. One of the questions in that case was whether an
agreement was within the statute if its performance was
to be commenced on both sides within the year. The
court held that it was. To the writer's mind the reasons
for holding that a part performance does not take the
case out of the statute apply with equal force to a con-
tract wholly performed on one side but unperformed on
the other. Nevertheless it was in the course of the argu-
ment suggested by Lord Ellenborough that if there was
complete performance on one side, and nothing remitted
beyond the year except payment of the consideration, the
statute would not apply. This chance suggestion, in ar-
gument of an idea apparently removed by final considera-
tion of the case, was seized upon later and made the
basis of one or more *obiter dicta*. Finally, in 1832, the
doctrine was announced, in a case directly involving the
question, that the statute refers only to agreements not
to be performed on either side within the year. (*Donellan
v. Read*, 3 B. & Ad. [Eng.] 899.) The reason there given
is solely *ab inconvenienti* and fallacious. The case is sup-
posed of a sale of goods to be paid for in thirteen months,
and it is said that the law could not intend that the
vendee should so get the goods and evade payment. The
court failed to perceive that although the special con-
tract would fail there could be a recovery on a *quantum
valebant*. Moreover, the statute is founded on public
policy, and contemplates that individuals must and shall
suffer if they neglect to comply with its simple require-
ments. *Donellan v. Read* was doubted in *Souch v. Straw-
bridge*, 2 M. G. & S. [Eng.] 808, in 1848, but was followed
in *Cherry v. Heming*, 4 Exch. [Eng.] 631, and other cases.
In 1886 the doctrine was disapproved, but was considered
to be too firmly established to be departed from. (*Miles v.
New Zealand Co.*, 32 L. R. Ch. D. [Eng.] 266.)

When our statute was first enacted the doctrine of
*Donellan v. Read* had been adopted in Maine (*Holbrook v.
Armstrong*, 10 Me. 31), in Alabama (*Rake v. Pope*, 7 Ala.

161), in Georgia (*Johnson v. Watson*, 1 Kelly 348), in South Carolina (*Bates v. Moore*, 2 Bailey 614), in Missouri (*Blanton v. Knox*, 3 Mo. 343), and in Maryland (*Ellicott v. Turner*, 4 Md. 476). It had then been disapproved in only two states—in New York (*Broadwell v. Getman*, 2 Den. 87), and in Vermont (*Pierce v. Paine*, 28 Vt. 34). Prior to its re-enactment in 1864 the English rule had been followed in New Jersey (*Berry v. Doremus*, 30 N. J. Law 399). It was again re-enacted as a part of the Revised Statutes in 1866, and had in the meantime received a construction like that put upon it in England in New Hampshire (*Perkins v. Clay*, 54 N. H. 518, overruling an earlier case to the contrary), and in Illinois in a case just like that before us (*Curtis v. Sage*, 35 Ill. 22). By a course of decisions Indiana and Wisconsin had committed themselves also to the English construction. (See cases cited in *Wolke v. Fleming*, 103 Ind. 105, and *Grace v. Lynch*, 80 Wis. 166). Massachusetts had, however, in 1864, adopted the view previously expressed in New York and Vermont. (*Marcy v. Marcy*, 9 Allen 8.) The cases since the last enactment of our statute are not of similar importance, but it may be said that the following later cases enforce the English rule: *Smalley v. Greene*, 52 Ia. 241; *Dant v. Head*, 90 Ky. 255; *Durfee v. O'Brien*, 16 R. I. 213; *Seddon v. Rosenbaum*, 85 Va. 928; *Atchison, T. & S. F. R. Co. v. English*, 38 Kan. 110. The other view has received an implied support from Judge Toulmin in *Warner v. Texas & P. R. Co.*, 54 Fed. Rep. 922. It will thus be seen that at the time of the first adoption of our statute the almost uniform current of authority was in accord with *Donellan v. Read*, and that the later decisions have not tended to very materially reduce that preponderance. There are, it is true, some slight variations in the language of different statutes, but nothing of any logical force in controlling the construction in this respect. We think it must be said that the words of our statute had received such a settled construction that our legislature in enacting them, and in twice re-enacting them, intended that that

construction should be placed upon them. In the recent case of *Bloomfield State Bank v. Miller*, 55 Neb. 243, we expressed our disapproval of the former tendency of courts to evade the statute of frauds, and refused to give effect to the English doctrine of an equitable mortgage by deposit of title deeds, in part because such a mortgage is opposed to the letter and the spirit of the statute; but in that respect the language of the statute is most explicit, and the English rule had been repudiated by all the well-considered cases in the United States, so that there was no presumption that our legislature had intended to give effect to such equitable mortgages. We here adopt the English rule, not as being a correct construction of their statute, but because we are convinced that in the light of history it is the construction which our legislature intended should be adopted. Before leaving the subject it may be well to say that some of the cases imply a distinction as between contracts merely contemplating performance on one side within the year, and those where performance has actually taken place on the one side within that period, and the action brought after such performance. Whether there is ground for such distinction we need not here consider, and do not decide, because in this case there had been actual as well as contemplated performance.

In the district court there was a stipulation whereby the parties in effect agreed to rest, the plaintiff on his amended petition and the defendant on his demurrer, and in the event of reversal by this court that judgment should be entered for the plaintiff for an amount stipulated. Recently there has been filed here a transcript of proceedings in the United States circuit court for this district, whereby it appears that pending these proceedings the land has been sold under decree foreclosing the mortgages, and that part of the debt has been by the plaintiff so realized. We are asked by the plaintiff to enter judgment under the stipulation, giving credit for the amount shown to have been so realized. The defend-

ant, on the other hand, insists that the foreclosure was a violation of the stipulation and released the defendant from its obligations. The transcript of a court over which this has no control or supervision is merely evidence, and as such is not relevant to any issue before us. If the proceedings in the federal court have any effect on the rights of the parties in this case, they should be asserted by supplemental pleadings, as facts arising since the action was begun and the stipulation was made, and the district court is the proper place for such original proceedings. We will not enter judgment as prayed, but remand the case to the district court for further proceedings not inconsistent with this opinion.

REVERSED AND REMANDED.