PLATTE COUNTY INDEPENDENT TELEPHONE COMPANY, AP-
PELLANT, V. LEIGH INDEPENDENT TELEPHONE COM-
PANY, APPELLEE.*

FILED NOVEMBER 9, 1907.   No. 14,765.

Injunction: CONTRACT, BREACH OF: STATUTE OF FRAUDS. A court of
equity will not enjoin the breach of an oral contract which by
its terms is not to be performed within one year from the making
thereof.

APPEAL from the district court for Colfax county: JAMES G. REEDER, JUDGE. *Affirmed.*

*J. J. Sullivan* and *C. J. Garlow*, for appellant.

*Thomas & Cain*, contra.

GOOD, C.

Appellant commenced this action in the district court for Colfax county against the appellee, alleging that both plaintiff and defendant were corporations organized under the laws of Nebraska and engaged in the general telephone business, plaintiff in Platte county, and defendant in Colfax county; that the principal place of business of the

* Rehearing allowed. See opinion, p. 46, *post.*

42. NEBRASKA REPORTS. [VOL. 80

Platte County Independent Telephone Co. v. Leigh Independent Telephone Co.

plaintiff was the city of Columbus, and that of the defendant the village of Leigh; that about the first of June, 1904, plaintiff and defendant entered into a contract by which it was agreed that the telephone lines of the respective parties should be connected at the town of Creston, in Platte county, in the exchange there maintained by the plaintiff, and whereby the subscribers of the plaintiff were to be furnished telephone facilities and service over the lines of the defendant, and the patrons of the defendant were to be furnished similar facilities and service over the lines of the plaintiff, and that the said contract was to be continued in force for five years from its date; that in pursuance of and as a part of said agreement plaintiff changed its telephone lines from Columbus to Creston from a grounded to a metallic circuit, and defendant extended its lines from Leigh to Creston and connected with plaintiff's exchange. Plaintiff further averred that in November, 1904, it sold its Creston exchange to the defendant for the consideration of $1,250, to be paid in stock of the defendant company to be thereafter issued, and that in pursuance of said contract it turned over to the defendant its telephone exchange at Creston, and that the inducement for the sale of the Creston exchange was the alliance and interchange of business between the two companies, and that this was considered as an inducement to the sale was understood by both parties at the time of the sale. It also averred that some months thereafter the defendant company entered into a contract with the Nebraska Telephone Company, whereby those two companies had formed a business connection and alliance to the exclusion of the plaintiff, and that under and by virtue of the agreement between the defendant and the Nebraska Telephone Company the plaintiff and its patrons will be cut off and excluded from the use of the lines of the defendant company, and that it will be denied the right of interchange of business with the defendant and its patrons, as contemplated by the contract between the parties to this action. These allegations were followed by appropriate allegations as to

the nature of the damages and injuries plaintiff will sustain if the defendant is permitted to disconnect the telephone lines of the parties to this action, and plaintiff prays for an injunction restraining the defendant from carrying into effect its agreement with the Nebraska Telephone Company, in so far as said contract contemplates the exclusion of the plaintiff from the use of the lines of the defendant company, and in so far as it contemplates the exclusion of the patrons of the defendant company from the use of the lines of the plaintiff company, and a suspension of the interchange of business between the companies plaintiff and defendant. Defendant answered, admitting the corporate existence of the parties and the general nature of the business of each, and admitted an oral agreement with the plaintiff, whereby it was to connect its telephone system with that of the plaintiff at Creston, and denied all the other allegations of the plaintiff's petition. It also pleaded affirmative allegations, which need not be noticed. There was a trial to the court, resulting in findings and judgment in favor of the defendant, dissolving the temporary injunction that had been issued at the commencement of the action, and dismissing the action of the plaintiff. To reverse this judgment plaintiff appeals to this court.

With reference to the second contract, whereby the sale of the Creston exchange was said to have been made, it is sufficient to say that the evidence fully discloses that, while negotiations were had between the parties for the sale of the exchange, they never ripened into a sale, and we have, therefore, only to deal with the rights of the parties as affected by the first agreement made in June, 1904, for the interchange of business between the two companies. The Nebraska Telephone Company is not made a party to this action, nor is any alleged contract between the defendant and the Nebraska Telephone Company set out in the pleadings, nor are the terms of any such contract disclosed by the evidence. Plaintiff asks that defendant be enjoined from carrying out its contract with

44 NEBRASKA REPORTS. [Vol. 80

Platte County Independent Telephone Co. v. Leigh Independent Telephone Co.

the Nebraska Telephone Company, in so far as the said contract might require the defendant to disconnect its lines from the plaintiff's lines, and to refrain from interchange of business with the plaintiff. But, without the Nebraska Telephone Company being made a party, and without the contract between it and the defendant being brought before us, we are at a loss to understand how we could hold such a contract inoperative, or to enjoin the carrying out of any of its provisions between the parties to it. We take it, however, that the real point aimed at by the plaintiff is to enjoin a breach of the contract of June, 1904, between the plaintiff and defendant.

It is a familiar doctrine that courts of equity will interfere to prevent the breach of an executory contract, where the breach thereof by one party would work irreparable injury to the other, especially where an award of damages. for a breach thereof would not adequately compensate the injured party. But, in order to invoke the aid of a court of equity to restrain the breach of a contract, it must first be shown that a valid and subsisting contract susceptible of enforcement exists between the parties. In the present action the evidence discloses that the agreement of June, 1904, between the parties was not in writing, and the record leaves the court in doubt and uncertainty as to the period of time the contract was to run. Plaintiff alleges in its petition that the contract was to extend for a period of five years from its date. One of its witnesses states that it was to run for five years, and one that it was to run for three years, but in any event the contract by its terms was one not to be performed within one year from the making thereof.

Defendant has invoked the protection of the statute of frauds. Section 5957, Ann. St. 1903, reads in part as follows: "In the following cases every agreement shall be void, unless such agreement, or some note or memorandum thereof, be in writing, and subscribed by the party to be charged therewith: First, every agreement that, by its terms, is not to be performed within one year from the

making thereof." Plaintiff seeks to avoid the force of the statute by contending that the contract had been practically executed, and that the conditions thereof had been performed, and the respective parties were doing business and serving their respective patrons over each other's lines, and that the division of tolls and settlements and manner of management were incidents and minor matters growing out of the real contract. It is true that there were several matters mentioned as a part of the contract, to wit: That a certain subscription list should be turned over by the plaintiff to the defendant, and that plaintiff should change its telephone lines between Columbus and Creston from a grounded to a metallic circuit, and that the defendant should build and extend its lines from Leigh to Creston; but, as we view it, the main object of the agreement was the interchange of business between the two companies, and the matters of building the lines and connecting the two telephone systems together were incidental to the main contract, to wit, the exchange and interchange of business. In fact, it is a breach of contract to interchange business against which the plaintiff asks relief. It appears clear to us that the plaintiff has wholly failed in its attempt to show that the contract is not within the statute of frauds, and that the contract falling under the ban of the statute is void, and that no rights can be asserted under it, and that a breach of it cannot be enjoined.

While holding the contract void and unenforceable under our statute, we do not wish to be understood as expressing any opinion upon the right of the appellant to compel by proper action an exchange of business between the two companies upon equitable terms. The issues raised in the pleadings with reference to the second contract are not urged by the appellant, and are, therefore, not considered.

For the reasons given, the judgment of the district court was right and should be affirmed.

DUFFIE and EPPERSON, CC., concur.

By the Court: For the reasons given in the foregoing opinion, the judgment of the district court is

AFFIRMED.

The following opinion on rehearing was filed May 7, 1908. *Former judgment of affirmance adhered to:*

1. **Statute of Frauds: EXECUTED CONTRACT.** Where an oral contract has been fully performed by the parties, or by one of them, it is not void under our statute of frauds, even though incidental matters growing out of the contract, such as a division of profits, may be required by its terms for a series of years.

2. **Injunction: CONTRACT, BREACH OF.** The breach of an oral contract by one of the parties will not be restrained, where the terms of the contract are in doubt, or so indefinite and uncertain that a court would not decree specific performance thereof.

DUFFIE, C.

A rehearing was granted in this case, and it has been again argued and submitted. The facts are fully set out in the opinion of Mr. Commissioner GOOD, *ante*, p. 41. We have again carefully examined the evidence contained in the bill of exceptions, and fully considered the briefs and arguments made upon the second presentation of the case, and are satisfied that our first opinion, with perhaps some modifications, should be adhered to.

In our former opinion we held that the contract between the parties was void under our statute of frauds, for the reason that it could not be fully performed within one year from the making thereof. Further consideration of the case impresses us with a doubt of the correctness of this holding. So far as the plaintiff is concerned, the contract was apparently performed on its part; and in the exhaustive opinion of this court in *Kendall v. Garneau,* 55 Neb. 403, it is said: "That portion of our statute of frauds which brings within its inhibition verbal or unsubscribed agreements which by their terms are not to be performed within one year from the time of making does not

extend to agreements wholly performed on one side within the year." It is true that as a result of the agreement entered into between the parties the revenue derived from an interchange of business was to be divided between the two companies on a basis of one-fourth to the defendant and three-fourths to the plaintiff, and this disposition of the income arising from the use of the lines was to continue during the life of the agreement. We do not think that this can be urged as a reason for holding the contract void, any more than could an oral partnership agreement for a term of years, but which was fully consummated by each of the partners contributing their share of the capital stock and engaging in the business contemplated by the agreement, be held void because of the future division of profits and losses. The fact that the profits and losses arising from the conduct of the business is to be divided between the partners in proportion to the amount contributed by each is a mere incident arising from the consummated contract. While there is some conflict in the opinions, the weight of authority seems to be that no written articles are necessary to constitute a copartnership which is to take effect immediately; while a written agreement is necessary to bind parties to enter into a future copartnership which is not to commence until after the expiration of a year. *Smith v. Tarlton & Finley*, 2 Barb. Ch. (N. Y.) 336; *National Bank v. Van Derwerker*, 74 N. Y. 234; 1 Bates, Law of Partnership, secs. 208, 209. It would seem that the same principle should govern the present case.

On another branch of the case we said in our former opinion that "it is a familiar doctrine that courts of equity will interfere to prevent the breach of an executory contract, where the breach thereof by one party would work irreparable injury to the other, especially where an award of damages for a breach thereof would not adequately compensate the injured party. But, in order to invoke the aid of a court of equity to restrain the breach of a contract, it must first be shown that a valid and subsisting contract

susceptible of enforcement exists between the parties."
This is the undoubted rule followed by all courts. 22 Cyc.
855. The evidence regarding the length of time which
the contract between the parties was to run is extremely
conflicting, and no one can tell whether it was to con-
tinue three years or five. The plaintiff in its petition
alleged that the contract was to continue for five years.
One of the plaintiff's witnesses testified that it was to
run five years, and one for three years. The defendant's
witnesses all testified that the contract between them was
to continue for an indefinite time, and we are unable to
say from the evidence before us what length of time the
contract was to continue. Such a contract could not be
specifically enforced, and if it could not be specifically
enforced a breach therefore by one of the parties will not
be restrained, at least, if the party against whom relief
is asked has performed on his part for a reasonable length
of time, and the record is barren of any evidence on this
point.

It is also urged in the argument that defendant is a
common carrier of news, and that it cannot refuse to
interchange business with the plaintiff; that public policy
and the requirements of business demand that telephone
companies shall connect and interchange with each other.
The case was not brought nor tried upon such a theory.
The action was founded wholly upon the contractual re-
lations said to exist between the parties. When the right
of the plaintiff to compel an interchange of business with
defendant company is presented to us in a proper action,
it will be time enough to determine that question. It
would be unfair to the defendant and to the trial court
to base a decision upon a question that was never pre-
sented to the district court. Whether an interchange of
business between the defendant company and the Ne-
braska Telephone Company, or with the plaintiff, or with
both these companies, would be most conducive to the
public interest was not an issue in the case, and is not
for us at this time to determine.

We recommend an adherence to the former opinion.

EPPERSON and GOOD, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the former opinion is adhered to.

AFFIRMED.