ELLA E. LATSON, APPELLANT, v. OLIVE D. BUCK ET AL., APPELLEES.

FILED MAY 23, 1910. No. 16,474.

1. Statute of Frauds: SALE OF LAND: VOID CONTRACT: FRAUD: RIGHT OF ACTION. While an oral contract for the sale of lands, between the owner and a real estate broker, is void under the statute of frauds, as defined by section 74, ch. 73, Comp. St. 1909, yet if such contract is fully executed by the parties to it, and either party is damaged or injured by the fraud of the other, the law gives the injured party the same rights of action as he would have had had the contract been valid in its inception.

2. Pleading: FRAUD. The petition, stated at length in the opinion, held to state a cause of action.

APPEAL from the district court for Douglas county: WILLIAM A. REDICK, JUDGE. Reversed.

John C. Wharton and Byron G. Burbank, for appellant.

Smyth, Smith & Schall, contra.

REESE, C. J.

This cause is submitted as under rule 2 of this court, which is to the effect that when counsel can agree upon a

printed abstract of the record and evidence, and file their briefs, the case can be heard in advance without waiting for the cause to be reached in its regular order. In the preparation of the case counsel have misapprehended the rule, and have printed, practically, the whole record. The "abstract" presented consists of a full copy of the petition, the answer, the reply, the evidence, the objections thereto, the ruling of the court sustaining the objections, the decree, the notice of appeal, the supersedeas bond, the stipulation, and the assignment of errors. The history of the case, in so far as was necessary to be presented here, is that plaintiff filed her petition, and when she offered her evidence the defendant objected on the ground that the petition did not state facts sufficient to constitute a cause of action, and that the evidence offered was incompetent, irrelevant and immaterial. The objection was sustained, and plaintiff excepted. It will appear at once that all that was necessary to be shown by the abstract was a copy of the petition, or the substance thereof, a statement that defendants appeared and answered, that the case came on for trial, and when plaintiff offered her evidence the objection was made, stating the grounds, the ruling of the court thereon, and the final dismissal of the case. All other parts of the record are shown in the transcript filed in this court and need not be contained in the abstract. If the trial had proceeded, and the evidence had been admitted, resulting in a finding against the appellant, whether plaintiff or defendant, it would then have been necessary to have abstracted the pleadings and the evidence sufficiently to present the point or points of law relied upon and to be presented; nothing more. It is not contemplated that the whole record shall be printed as in this case. This, however, does not dispense with the filing in this court of the transcript of the record and bill of exceptions. The objection to the introduction of evidence on the ground stated in this record is in effect a demurrer to the petition. *Curtis v. Cutler,* 7 Neb. 315. The presence of an answer can have no bear-

ing upon what the decision should be. The petition must stand or fall according to its own strength.

It is alleged in the petition that on the 1st day of September, 1907, the plaintiff was the owner of lots 2, 3 and 4, in Tukey's subdivision of block 7, of A. S. Patrick's addition to the city of Omaha, of the value of $4,500; that plaintiff verbally employed the defendant David R. Buck to effect a sale thereof at that price in cash or exchange for other property; that he entered upon said employment as her agent, and, after having sought to sell or exchange said real estate, submitted to plaintiff a proposition for an exchange of her said property for a certain farm in Sarpy county (describing the same), owned by Thomas B. Holman, the terms of which were that she should convey her said property to Holman and pay him $1,500 in cash, and Holman convey to her the farm referred to, subject to a school land contract amounting to $568.62; that Buck informed her that Holman would make the exchange on said terms; that they were the best terms that Holman would make for the exchange of their properties; that Holman did not want the lots owned by plaintiff, and would take them only on condition that he (Buck) would exchange some land he had in Colorado therefor, and which he had agreed to do, and assuring plaintiff that said terms were the best that Holman would make, and that he advised plaintiff that it would be for her best interest to accept said proposition; that plaintiff did not meet Holman during said negotiations; that the same were wholly with Buck, upon whom plaintiff relied and whose statements she believed, having no other knowledge or information; that so relying, and by reason thereof, she, on the 26th day of October, 1907, entered into a written contract for said exchange, a copy of which is set out at length in the petition, but which is too long to be here repeated. It must be sufficient to say that it bears date October 26, 1907, and states that it is an agreement "between Thomas B. Holman of Stratton, Colorado, party of the first part, and Ella E. Latson of

Omaha, Nebraska, party of the second part." After the agreement of Holman to sell and convey the lands in Sarpy county (describing it by government subdivisions) is stated, it is recited that "Ella E. Latson agrees to purchase said real estate from said Thomas B. Holman at and for the price of six thousand five hundred sixty-eight and 62-100 dollars ($6,568.62) to be paid for as follows, viz., two hundred dollars ($200) cash as part purchase price, receipt of which is hereby acknowledged; thirteen hundred dollars ($1,300) to be paid when deeds are exchanged, and the following described property at the agreed price of four thousand five hundred dollars ($4,-500): lots two, three and four, block seven, in Tukey's subdivision of A. S. Patrick's addition to the city of Omaha, Douglas county, Nebraska, which said property the said Ella E. Latson agrees to transfer by warranty deed to said Thomas B. Holman, his heirs and assigns, or whom he may specify, their heirs and assigns, as part purchase price, as aforesaid; Ella E. Latson, party of the second part, to assume a balance on the school land contract amounting to five hundred sixty eight and 62-100 dollars ($568.62). Said real estate so transferred to be free of all incumbrances." The contract further stipulates for abstracts of titles, each party to pay all taxes due on the property to be transferred, the deal to be closed and finished as soon as abstracts showing perfect titles and deeds are made. There are other provisions of an unimportant character which we need not notice. The contract closes in the usual form, and is signed "Thomas B. Holman, party of the first part, by D. R. Buck & Son, his agent. Ella E. Latson, party of the second part."

It is further alleged in the petition that Holman was willing to sell his farm to plaintiff for $2,500 in cash, subject to a balance of $568.62 unpaid upon a school land contract of which Buck had knowledge at all times during said negotiations, at the time of the signing of the contract, the exchange of the properties, and the payment of the $1,500 in cash paid by her, but he purposely and in-

tentionally concealed the same from plaintiff, and at all times intended thereby to defraud plaintiff; that he never agreed with Holman to, and never did, exchange any Colorado or other lands, or thing of value, with said Holman for the lots owned by plaintiff; that Holman never knew of the terms of the contract entered into, never saw it, or knew that there were any provisions therein relating to the lots owned by plaintiff, never made nor authorized D. R. Buck & Son, or the said David R. Buck, to make it; that he never purchased said lots of plaintiff or owned them, or knew of them prior to the exchange of properties, but that the same and all its terms were concealed from him by defendant for the fraudulent purpose of defrauding plaintiff; that on the 14th day of November, 1907, plaintiff, at the request of David R. Buck, did cause her said lots to be conveyed to the defendant Olive D. Buck, the wife of the said David R. Buck; that the said Buck told plaintiff that he had conveyed his Colorado lands to Holman; that Holman was to convey the plaintiff's lots to him, but that to save the making and recording of one deed for plaintiff to cause the conveyance of her lots to be made direct to his said wife, Olive D. Buck, which plaintiff did, and in so doing she relied wholly upon the statements made by said Buck, believing the same to be true, when, in fact, they were false and fraudulent, and made for the purpose of defrauding her out of said lots and getting them for his own exclusive benefit and without paying anything therefor; that Holman never directed that plaintiff deed said lots to the said Olive D. Buck, nor did he ever specify her as the person to whom said lots should be conveyed; that on the 12th day of November, 1907, the said Olive D. Buck, anticipating the conveyance by plaintiff of said lots to her, together with her husband, the said David R. Buck, executed a mortgage to one J. C. Camberg upon said three lots to secure the payment of the sum of $1,500; that the said David R. Buck received the said $1,500 named in said mortgage, and paid $1,000 thereof to said Holman, which, added to the $1,500

paid by plaintiff, made and aggregated the sum of $2,500, the price of the land as fixed by Holman and for which he was willing to sell it, the theory being that the whole amount paid Holman was paid by plaintiff in cash and from her property, leaving property and money to the extent and value of $3,500 in the hands of defendant which he appropriated to his own use and which belonged to plaintiff. The prayer of the petition is, in effect, for a reconveyance of the three lots in the city of Omaha, subject to the mortgage for $1,500 placed thereon by defendants, the petition alleging that they are both insolvent. The petition is of great length, is much involved, and, as we think, might have been much shortened and more easily comprehended had the facts been more systematically grouped.

As we understand the petition, it is sought to be and is alleged that defendant had the Holman farm for sale at the price of $2,500; that plaintiff placed her property in his hands for sale or exchange for other property, by and under a verbal agreement; that defendant, while advising with plaintiff, advised her that the Holman farm could be had for $6,500, which was $4,000 more than the price asked by Holman, and advised plaintiff to make the exchange on that basis; that during the negotiations he informed her that he had a tract of land in Colorado which he could exchange with Holman and take plaintiff's property, and later informed her that he had consummated the exchange with Holman, both of which statements were untrue; that instead of informing plaintiff the true price at which Holman held the land he inflated it so as to include plaintiff's property, the $1,500 which she was to pay, and the $568.62 of indebtedness to the state on the Holman school land; that before her conveyance of the city property defendants executed a mortgage thereon for $1,500, and upon completion of the transfer took $1,000 of the $1,500 so secured by the mortgage, added it to the $1,500 cash paid by plaintiff, making the $2,500, to be paid to Holman, and with it paid for the land; that dur-

ing all of said time the fiduciary relation existed between plaintiff and defendant; that plaintiff relied upon and believed the statements made by defendant, and, so relying, she made the exchange, and was thereby defrauded.

The answer consists, for the most part, of specific denials of the averments of the petition, but contains affirmative allegations as to the knowledge of plaintiff of certain important facts, forming the issues of fact, but as the objection to the introduction of evidence was made and decided upon the belief that the petition did not contain facts sufficient to constitute a cause of action, we will have to ignore the answer, treat it as never filed, and devote our whole attention to the matter of the averments of the petition, treating them all, for the purpose of this decision, as true and admitted so to be.

One of the contentions on the part of defendants is that Buck could not be the agent of plaintiff, or, at least, was not, for the reason that plaintiff knew that he was the agent for Holman, and was therefore bound to him as such agent, and could not represent plaintiff in the transaction referred to. We find nothing in the petition showing just when or how Buck was created the agent for Holman, but it alleged that the creation of that relation between plaintiff and Buck dated from the 1st day of September, 1907, nearly two months prior to the date of the written contract. It is not alleged, nor does it appear, that the agency of Buck for plaintiff was sought to be created for the exchange of properties with Holman, but that the possibilities of that deal may have arisen after Buck had both properties for sale. In that event we know of no rule of law that would have required Buck to terminate his agency for either party, but may, with the knowledge of both parties to the transaction, have so continued. *Campbell v. Baxter,* 41 Neb. 729; *Andrew v. Whitwer,* 3 Neb. (Unof.) 55; *Strawbridge v. Swan,* 43 Neb. 781. In so far as this question may become important, if at all, in this case, it would have to depend upon the evidence.

The principal contention is over the effect of the pro-

visions of section 74, ch. 73, Comp. St. 1909, upon the issues in this case. That section is as follows: "Every contract for the sale of lands, between the owner thereof, and any broker or agent employed to sell the same, shall be void, unless the contract is in writing and subscribed by the owner of the land and the broker or agent, and such contract shall describe the land to be sold, and set forth the compensation to be allowed by the owner in case of sale by the broker or agent."

In *Baker v. Gillan*, 68 Neb. 368, we held, in substance, that the enactment of the above section was an extension or enlargement of the statute of frauds and became a part thereof, and we therefore conclude that it must be governed by the same principles as are applied to those statutes generally.

We think it is well settled that, while a contract, void by statute, will not be *enforced* as between the parties to it, yet if the contract has been executed by one or both parties to it, the bar of the statute is removed, and the contract may, under certain circumstances, be proved. *Kendall v. Garneau*, 55 Neb. 403; *Platte County Independent Telephone Co. v. Leigh Independent Telephone Co.*, 80 Neb. 46; *Bibb v. Allen*, 149 U. S. 481, 497; *Milner v. Harris*, 1 Neb. (Unof.) 584; *Bailey v. Bishop*, 67 S. E. (N. Car.) 968.

In Browne, Statute of Frauds (5th ed.) sec. 116, it is said: "Where the contract has been in fact completely executed on both sides, the rights, duties, and obligations of the parties resulting from such performance stand unaffected by the statute," citing a number of cases which need not be referred to. At the close of the section he says: "So with all cases of contracts embraced by the statute. When fully executed on both sides, the positions of the parties are fixed, subject, of course, to the power of a court of equity to afford relief in cases of fraud and mistake."

As we have seen, the petition alleges the establishment of a fiduciary relation between Buck and plaintiff. If the

creation of that relation grew out of a void contract under the statute of frauds, but that contract has been fully executed and carried out by both parties, as alleged in the petition, the subject of the fraudulent acts of either party by which the other is damaged, or his property rights injured, is as fully open to investigation by the courts of equity as if the contract had been legal and binding in the first instance. We are not unmindful of the cases cited in appellees' brief decided by this court upon the question of the right of a broker, under a verbal contract, to recover compensation for services rendered in making a sale, and we fully indorse and approve all that is said in the decisions referred to, but cannot see that they can exert any controlling influence over this case.

What we have said here applies alone to the averments of the petition, and can have no bearing upon the truth or untruth of the facts alleged should the cause be finally tried upon issues joined. We think the averments of the petition, taken as true for the purposes of this decision, state facts sufficient to constitute a cause of action, and that the ruling of the district court in excluding all evidence in its support was erroneous.

The judgment is therefore reversed and the cause remanded for further proceedings according to law.

REVERSED.

LETTON, J., concurring.

I concur in the conclusion reached, but am inclined to think that the reasoning of the opinion is at variance with the cases in this court in which we have held that a broker is not entitled to recover upon a *quantum meruit* for services rendered in disposing of real estate under a parol contract for commissions. I am satisfied that the conclusion is correct, and that the petition states a cause of action. To hold otherwise would permit a person to procure the confidence of another by inducing his victim to believe he was his agent and acting in his behalf, and,

after procuring an undue and improper advantage by means of such reliance upon the relations of trust and confidence so created, to set up the statute as a bar to being called upon to account. This was not the purpose of the law. It was enacted to prevent fraud, and not to foster it. The action is not upon a contract of agency. It is for fraud committed under the cloak of agency, and whether compensation for services rendered by the - alleged agent can or cannot be recovered on account of the statutory bar is not material. If the plaintiff was induced to confide in the defendant by reason of her belief that he was her agent, and he so represented, or wilfully acted in such a manner as to deceive her, and took advantage of this belief to defraud her, she is entitled to recover. Cases based upon this principle, though differing in the facts, are: *Corder v. O'Neill*, 176 Mo. 401; *Busick v. Van Ness*, 44 N. J. Eq. 82; *Tate v. Watts*, 42 Ill. App. 103; *McNaughton v. Smith*, 136 Mich. 368; *Haycraft v. Creasy*, 2 East (Eng.) 92.

ROOT and SEDGWICK, JJ., concur in these views.