ALBERT J. NIEBELS v. B. J. HOWLAND.[1]

January 26, 1906.

Nos. 14,596—(177).

**Exchange of Property.**

When an owner of personal property agrees to sell the same at a stipulated amount, in consideration for real estate to be conveyed to him, and delivers such property to the purchaser, who fails to pay for it in the manner provided, the seller may maintain an action for the recovery of the stipulated price.

[1]Reported in 106 N. W. 337.

**Action for Price—Pleading.**

If in such action the purchaser pleads, as a defense, that he was at all times ready and willing to perform the contract of purchase and had tendered proper conveyance in payment, and that the seller had refused to accept the same, the seller may reply to such answer by admitting the contract, and allege that it was entered into by reason of the fraudulent representations of the purchaser and for that reason was not performed. Such reply is by way of confession and avoidance only to the new matter set up in the answer, and is not a departure from the complaint.

**Fraud.**

The evidence in this case was sufficient to justify the jury in finding that material and substantial misrepresentations were made by the purchaser in respect to the nature of the property to be conveyed to the seller, who was justified in refusing to accept the same in payment.

Action in the district court for Otter Tail county to recover $1,000 as the stipulated price for goods sold and delivered. Defendant, answering, set up a written contract between the parties for the exchange of land for the goods and alleged a breach thereof by plaintiff. Plaintiff replied alleging fraud and misrepresentation on the part of defendant, justifying plaintiff's refusal to accept the land in payment. The case was tried before Baxter, J., and a jury, which rendered a verdict in favor of plaintiff for $691.05. From a judgment entered pursuant to the verdict, defendant appealed. Affirmed.

*C. M. Johnson* and *Houpt & Field,* for appellant.

*E. E. Corliss,* for respondent.

LEWIS, J.

The complaint alleges that respondent sold and delivered to appellant a stock of hardware at the agreed price of $1,000 and that the same has not been paid.

The answer admits the sale and delivery of the stock of hardware, but denies that the agreed price was $1,000, or that appellant promised to pay for it in any other manner than in accordance with the terms of a certain written contract, the purport of which was set out in the answer, to the effect that appellant, being the owner of a section of land in Becker county, subject to a mortgage of $1,200, and also subject to a sale contract, exchanged his interest in the land, subject to the

mortgage and contract, in consideration of respondent's stock of hardware. The answer further states that in pursuance of the contract the parties invoiced the stock of hardware and mutually agreed that, for the purposes of trade, the hardware be estimated at the price of $1,000; that respondent delivered the hardware to appellant in accordance with the agreement, and that appellant took possession of the same; that appellant complied with his terms of the agreement and executed and tendered to respondent a good and sufficient warranty deed of the premises, subject to the mortgage and contract of sale, and requested respondent to execute and deliver to appellant his promissory note for $1,027.90, which was the difference between the hardware stock at $1,000 and respondent's interest in the land, subject to the mortgage and sale contract, but that respondent had failed and refused to accept the deed and to execute the mortgage.

In reply, respondent admitted the execution of the contract, and alleged that appellant, with intent to defraud, represented that he was the owner of the land described in the answer, consisting of three hundred forty three acres; that it was of the value of $5,500, for which sum appellant had contracted in writing to sell the same to one Frank W. Day and others; that the purchasers had paid thereon $2,500 in cash, and that there was due appellant from such purchasers the further sum of $3,227.90, including interest, which amount was payable according to three promissory notes, due in 1905, 1906, and 1907; that all of the signers of the notes and the contract were in every way personally responsible; that the notes were good, bankable paper which could be easily sold for the face value; that the land was subject to a prior mortgage of $1,200; and that appellant's equity in the land was of the value of $2,027.90. The reply further alleged that respondent relied upon such statements and representations as true, and accordingly entered into the contract to sell the hardware to appellant and delivered the same to him pursuant to the agreement; that such statements were false, the property not being worth more than $1,715; that Day and others had never paid the sum of $2,500, or any other sum, as part of the purchase price; that appellant never had any valid contract for the sale of the land for cash, as represented, and there was no contract for the sale of the land, except a certain written contract of date November 10, 1903, which was attached to the reply as an exhibit.

1. Several of the assignments present the question whether the reply did not constitute a departure in pleading.

The contract between appellant and respondent amounted to a sale by respondent of a stock of hardware to appellant at the price of $1,000, which was arrived at by taking an invoice at the wholesale prices, and appellant agreed to pay for the same in land, subject to certain incumbrances, at the agreed price of $2,027.90. Relying upon the promises of appellant to make the payment, the hardware was delivered to him, and according to respondent appellant never paid for it, either in the manner provided by the contract or in any other way. Now, under such state of affairs, what was respondent's remedy?

If the allegations of the reply were true, then appellant could not retain the stock of hardware and refuse to pay for the same. Having failed to return the hardware, and to pay for it, respondent was entitled to treat the contract as valid and sue for damages for failure to carry out its terms, or to rescind the contract and bring an action to recover the value of the hardware, and by commencing an action to recover its value respondent elected to rescind the contract. He might have set up the entire transaction, alleged appellant's failure to carry out the contract and that respondent had elected to rescind it, alleged the value of the stock of hardware, and asked damages for the amount; but it was not necessary, in the first instance, to plead the entire transaction. The parties had agreed that the purchase price of the stock was $1,000, and the complaint was prima facie within the facts when it alleged that the hardware was sold to appellant at that price and that he agreed to pay for the same. All the defense amounts to is that appellant agreed to pay the $1,000, not in money, but by turning over property which was represented to be worth that amount. The purpose of the new matter in the answer was to show that appellant was not obligated to pay the $1,000, for the reason that he agreed to pay it in a specific manner and that he had been prevented from so doing by the personal acts of respondent. The reply does not aid the complaint, but is directed to new matter in the answer, for the purpose of avoiding it, and consequently was not a departure. Appellant was not misled by the complaint. The answer admitted fixing the purchase price of the hardware at $1,000, and respondent was entitled to assume that in fail-

ing to pay as specified appellant had concluded to pay the agreed price in cash.

2. The evidence was sufficient to justify the court in submitting the issues to the jury, and the verdict is conclusive upon those questions. Appellant resided at Detroit and respondent at Fergus Falls. The land was located in Becker county, more than sixty miles from Fergus Falls. Respondent and his father, who assisted in the negotiations, had no knowledge whatever of the land, the parties who executed the note, the nature of the mortgage, or contract of sale, except such information as appellant gave them. Respondent testified that he did not see the Day contract; that appellant said it was in the bank at Detroit; that appellant did not tell him what the conditions of it were, except that he said it was a contract as good as gold; that he was not informed it embraced the conditions for payment by cutting and delivering wood and lumber; that he understood it to be a straight contract, one for the sale of land for money, and never knew anything to the contrary until after the hardware stock had been delivered to appellant. Respondent's father, who took some part in the negotiations, testified that appellant stated to him that his equity in the land was worth $2,027; that he did not see the Day contract, and did not know its contents; that he was informed by appellant that he had sold the land to Day for $5,000, of which $2,500 had been paid; and that the contract was as good as cash.

The Day contract, dated November 10, 1903, is a very long and involved instrument. It does not provide for the sale of the land for so much cash, according to the promissory notes referred to, but contains elaborate provisions for the payment of the notes by the purchasers in cordwood, lumber, and railroad ties, which the purchasers agreed to cut and put into merchantable shape and deliver to appellant, who was to sell the same and out of the proceeds pay the laborers for cutting, hauling, and sawing the timber, pay the taxes and interest due under the contract, and then apply the balance upon the principal. The contract stipulated certain amounts that should be paid for cutting cordwood, for board, for team hire, for hauling, and so much for sawing; and appellant specifically agreed that he would take certain material at certain stipulated prices and the balance at the highest market price.

If it be true that respondent was justified in assuming that the contract which appellant was talking about when negotiating the trade was an ordinary contract of sale for cash, then surely he could not be compelled to accept in lieu thereof the premises subject to a contract which did not call for payments in cash, but required him, as the assignee of the vendor, to assume the uncertainty of payment by the cutting of wood, etc., and to take the material at the highest market price and pay stipulated prices for the labor of putting it in merchantable shape. If the contents of such a contract were withheld from respondent, and he had no opportunity of informing himself as to its nature, then it was fraud upon him to induce him to enter into a sale of his hardware upon such representations. The concealment by appellant of the real nature of the sale contract, if true, was of such substantial character, and so radically different from the real contract, that respondent was entitled to repudiate the transaction, if by such misrepresentations he had been misled and influenced to enter into the arrangement.

It is not material that respondent alleged misrepresentation in several matters in respect to which no evidence was offered at the trial. Those allegations may be treated as surplusage and as having been waived. The evidence is sufficient to support the verdict.

Judgment affirmed.