Marguerite Springer, Executrix, Plaintiff in Error, v. The Campbell Company, Defendant in Error.

Gen. No. 17,349.

1. LANDLORD AND TENANT—*when tenant not obligated to pay increased rent.* A lease obligating a lessor to furnish electric current provided that on a stoppage for more than a certain number of hours the defendant lessee could obtain current at the landlord's expense, and in this respect was different from the leases of other tenants. The tenants had a meeting to demand better service at which defendant was spokesman. The power totally failed, and the lessor agreed to take current from an electric company if the tenants would pay an increased rental. Defendant agreed provided a satisfactory contract could be drawn up, and a contract was drawn up which the defendant refused to sign, and it obtained power from an electric company. *Held*, in an action for increased rental, that a contract to pay such rental was not made nor was there a new leasing at such rental.

2. FRAUDS, STATUTE OF—*when agreement by tenant is within.* An oral agreement by a tenant to pay an increased rent extending nearly five years is barred by the statute of frauds.

3. DISMISSAL AND NONSUIT—*when motion for nonsuit comes too late.* Where at the close of a plaintiff's case of the fourth class in the Municipal Court of Chicago defendant moves for a judgment and the court says, "I think I will sustain the motion, what have you to say," and then plaintiff moves for "nonsuit," the right to a nonsuit is governed by the Municipal Court Act, Section 30, and not the Practice Act, Section 70; the motion is not made before the court has stated its findings and it will be denied.

Error to the Municipal Court of Chicago; the HON. HOSEA W. WELLS, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1911. Affirmed. Opinion filed November 7, 1912.

N. A. BECK, for plaintiff in error.

DUNN & HAYES, for defendant in error.

MR. JUSTICE McSURELY delivered the opinion of the court.

Warren Springer, hereinafter called plaintiff, brought suit against the Campbell Company, a corporation, hereinafter called defendant, and upon a trial by the court judgment was rendered in favor of the

defendant, and plaintiff brings this case before us for review.

The defendant was a tenant in a building belonging to the plaintiff, under a written lease beginning May 1, 1909, and ending April 30, 1915. This lease provided, among other things, that plaintiff, the landlord, was to furnish electric current for the operation of defendant's machinery, defendant being engaged in the printing business. By a "rider" attached to the lease it was provided that a stoppage of electric current for fifty hours (for repairs, etc.) in each year was to be allowed to the landlord, and after the fifty hours were consumed then the liability of the landlord to the tenant was to be limited to the amount paid by the tenant to the Commonwealth Edison Company or "drainage canal" for electric current used during any stoppage of the supply from the landlord. It further provided that the tenant should maintain connection with the Commonwealth Company, and that all claims for payment of current thus used were to be made monthly and deducted from the following month's rent. The lease in this respect was different from the leases of the other tenants of the building, the defendant being the only tenant having a separate connection with the Commonwealth Company.

In May, 1910, the power service became so poor that the tenants held a meeting, at which a representative of the plaintiff was present. A witness testifies that the president of the defendant company "was apparently the spokesman of the meeting." At this meeting the tenants insisted upon better service in many particulars, and among other things urged that as the electric plant in the building was unfit, the landlord should make an arrangement to take current from the Commonwealth Company. Pending these negotiations the engine in the building broke down and the tenants were left without power, except as to the defendant, which obtained power through its separate connection with the Commonwealth Company. As the result of

the negotiations above referred to, the landlord agreed to make a connection for the building with the Commonwealth Company if the "parties in interest would pay him an amount equal to ten per cent. of the rent which they respectively were then paying, in addition to said rent." It was agreed that a contract in writing to this effect should be drawn.

The attitude of the defendant towards this agreement appears from the testimony of Mr. Ryden, the representative of the landlord at the meeting, who testified on behalf of the plaintiff. He says: "Mr. Campbell (the president of defendant) said he would pay the ten per cent. providing a satisfactory contract could be drawn up, and providing Springer would give them the power; and, so far as the terms of the contract were concerned, why, he would sign any contract which Mr. Dunn and I could agree on." Mr. Dunn was one of the attorneys for the defendant company, and Mr. Ryden was an attorney for the landlord.

A contract was subsequently drawn up, but not signed by the defendant, which refused to sign it. The landlord installed his connection with the Commonwealth Company, but defendant was not served with power through that connection, but continued for some months thereafter to get its power through its own separate connection with the Commonwealth Company, paying its bills for power direct to this company and deducting the same from the monthly rental, as provided in the "rider" to the lease. Some months after (the exact time does not appear) the landlord began to serve defendant with power through his connection with the Commonwealth Company. The power bills in evidence, paid by the defendant and credited to it by the plaintiff on account of rent, indicate that this change took place in September, 1910. On October 14, 1910, plaintiff brought suit against defendant for the ten per cent. addition to the rent reserved in the lease, and by an amended statement of claim filed November 25th set forth that his claim was "for the sum

of $156.05, said amount being equal to ten per cent. of the monthly rent of $295 per month, paid by the defendant to the plaintiff from May 23, 1910, to November 1, 1910." Upon hearing of the case the trial court found for the defendant.

The theory urged by plaintiff's counsel is that the evidence shows an independent contract between plaintiff and defendant, whereby defendant was obligated to pay the additional ten per cent. per month. It is at once apparent that this cannot be supported by the evidence. The defendant never entered into any agreement. At most there was a promise by it to enter into an agreement "providing a satisfactory contract could be drawn up." That this condition was never accomplished is evidenced by the fact that defendant refused to sign the contract subsequently submitted for that purpose. We can discern no very good reason in this particular why defendant should have signed this new contract, for by its lease it could obtain adequate power from the Commonwealth Company whether the plaintiff installed a connection for the entire building or not. What we have said applies also to the suggestion that if there were no independent contract then this court should hold that there was a new leasing, under which the defendant is bound to pay the increased rental. The error in both theories is in assuming a new agreement between the parties. The fact that the president of the defendant company was the spokesman at the meeting of the tenants held in May, for the purpose of demanding better service, and at which the matter of the payment of the ten per cent. was tentatively discussed, cannot be held to amount to an obligation of the defendant. The record shows that at this meeting the "spokesman" demanded concessions from the landlord in which the defendant was in no way concerned. It further may be said that even should the evidence indicate an oral agreement between the parties, it was an agreement extending nearly five years, and therefore barred by the stat-

ute of frauds. We hold the trial court was right in finding for the defendant.

It is earnestly urged that in any event there must be a reversal on the ground that the plaintiff was denied the right of taking a nonsuit. At the conclusion of plaintiff's case the defendant moved for judgment for the defendant upon the evidence introduced by plaintiff, and thereupon the following occurred:

"The Court: I think I will sustain the motion, what have you to say?

(Argument by counsel.)

"Mr. Beck: I make a motion for non-suit.

"The Court: I was afraid you would do that, so I started out by saying that I would find against you. The motion for non-suit is denied."

Both counsel herein have discussed this point upon the theory that section 70 of the Practice Act controls, and the cases cited have to do with this section. However, as we view the matter, this statute is not applicable herein, but rather section 30 of the Municipal Court Act, the latter part of which section provides that "Every person desirous of suffering a non-suit on trial shall be barred therefrom unless he do so before the jury retire from the bar, or before the court, in case the trial is by the court without a jury, states its finding." This is a case of the fourth class in the Municipal Court, and the section last referred to has to do with every suit at law other than a case of the second, third or fifth class. The question therefore is, did plaintiff's counsel move for a nonsuit before the court had stated its finding? Inspection of the record and of the above quotation from the abstract discloses that plaintiff did not move for a non-suit until after the court had stated its finding. Under the provisions of the statute referred to, this motion was made too late.

There being no reversible error in the ruling and finding of the trial court, the judgment will be affirmed.                                        *Affirmed.*