Argued February 18; affirmed March 17; rehearing denied
April 21, 1936

# BURGDORFER *v.* THIELEMANN

(55 P. (2d) 1122)

Robert J. Creamer, of Portland, for appellant.

Harold W. Peterson, of Portland, for respondent.

KELLY, J. Plaintiff charges that by false representations and a false promise, defendant fraudulently induced him to exchange a note in the principal sum

of $2,000, and the mortgage securing it together with two unsecured notes in the respective principal sums of $150 and $173, for lots 3 and 10, block 25, Collins View Tract in Multnomah county, Oregon, upon which there was a mortgage of $500. The mortgage securing the two thousand dollar note was upon approximately 64 acres of real property in Clackamas county, Oregon.

The representations, said by plaintiff to have been made by defendant, were that the Collins View lots had a present fair value of $2,400; that the tenant occupying the same had made the defendant a recent offer of $2,200; and the promise, alleged by plaintiff to have been made by defendant, was that defendant would assume and pay the five hundred dollar mortgage on the Collins View lots and save plaintiff harmless therefrom. It is also alleged in the second amended complaint, upon which issue is joined, that defendant represented to plaintiff that the party holding said last mentioned mortgage, whose name defendant refused to divulge, was away from the city of Portland and could not be contacted.

Plaintiff further alleges that upon the opening of negotiations for the exchange aforesaid, and at all times during said negotiations, plaintiff stated to defendant that he had had very little experience in dealing in real estate and no experience in dealing in property in the Collins View district; that he knew nothing of the value of such property; that he had heard that the defendant had dealt with real estate and real estate mortgages extensively; that he was going to act in reliance on the defendant's superior knowledge of the values of the Collins View tract; that the defendant assured the plaintiff that he might rely on his statements concerning the value and condition of the

said property; that he need make no further investigation, and that plaintiff did rely on the defendant's representations and statements as set out in said second amended complaint.

It is further alleged in plaintiff's second amended complaint:

"That the representations made to the plaintiff by the defendant hereinabove set out were false and fraudulent; that the defendant had no intention at the time of making the said promise, or at any time at all, of performing the promise to plaintiff hereinabove set out; that the defendant knew that the said representations and promise were false and fraudulent and that he made them in full knowledge of their falsity and with the design and intent that the plaintiff should believe the said representations and promise and should act in reliance thereon; that the plaintiff did believe and rely on the said representations and promise of the defendant and did act thereon to his great damage; that on or about the 5th day of December, 1933, the plaintiff, in reliance on the defendant's representations and promise, transferred and assigned to the defendant his mortgage and notes described and referred to in Paragraph I and III supra and received in exchange a deed executed by the defendant of the property described and referred to in said Paragraph IV supra; that, had the plaintiff not believed and relied on the said representations and promise of the defendant, he would not have made the said exchange.

"That in the latter part of January, 1934, the plaintiff learned for the first time that the defendant had made the promise to assume and pay the mortgage referred to in Paragraph IV supra with no intent to perform, and that the defendant did not intend to pay off said mortgage at all; that at the time of filing this complaint the balance unpaid on the said mortgage against the property the plaintiff received in the exchange hereinabove referred to, totalled $450.00; that in the month of January, 1934, the plaintiff learned for

the first time that the property referred to in Paragraph IV had a fair value, free from all encumbrances, in December, 1933, of a sum not to exceed $1200.00, that the tenant occupying the said property had made no offer of $2200.00 or of any sum even approaching that figure for the said property at any time and that the plaintiff had exchanged a note and mortgage of $2000.00 plus accrued interest, secured by property worth at least $3000.00, the said note being reasonably worth its face value, and two other notes in the principal sum of $323.00 plus accrued interest, the said notes being reasonably worth their face value, for property which, free and clear, had a fair value of not to exceed $1200.00.

"That at the time of filing this action the plaintiff has been damaged by his reliance on the defendant's fraudulent misrepresentations, conduct and promise as set out in Paragraphs VI, VII, VIII and IX herein in the sum of $466.60, this amount being $450.00 plus interest thereon at the rate of seven per cent. per annum from December 9, 1933, to June 19, 1935, and in the further sum of $1,123.00.''

An appropriate allegation in support of punitive damages is also made in said amended complaint.

Testimony was given tending to support the allegations of plaintiff's said second amended complaint. Defendant's testimony contradicted plaintiff's at all points tending to show fraudulent conduct on defendant's part.

Defendant's first assignment of error imputes error upon the part of the court in allowing plaintiff to testify as to appellant's alleged promise to pay off the mortgage on the Collins View property.

The precise objection which defendant makes is that the alleged promise could not have been performed within one year and, therefore, to be enforceable it must

have been reduced to writing and signed by the party sought to be charged.

In support of this assignment, defendant cites: *Hall v. Puente Oil Co.,* 47 Cal. App. 611 (191 P. 39) ; *Springer v. The Campbell Co.,* 174 Ill. App. 278; *Saunders v. Kastenbine's Executor,* 6 B. Mon. (Ky.) 17; Statute of Frauds, Sec. 9-909, Oregon Code 1930, and 27 C. J. 185.

*Hall v. Puente Oil Co.,* supra, is a case wherein a driver of an automobile, in operating the same, injured plaintiff. The court held that a contract, not in writing, to pay plaintiff $15 per month for 100 months was within the statute of frauds and inadmissible. It is not an action for deceit.

*Springer v. Campbell Co.,* supra, is an action for rent. The court held that no contract had been executed and the alleged contract covering a term of five years would have to be in writing. It is not an action for deceit.

*Saunders v. Kastenbine's Executor,* supra, is a suit in equity to restrain defendant from interfering with plaintiff's possession of a slave. The court held that plaintiff could not prove by parol testimony an agreement to purchase the slave by paying $400 for her at the rate of not less than four nor more than eight dollars per month for the reason, that, according to the manifest intention of the parties, the agreement was not to be performed within a year from the making thereof. It is not an action for deceit.

As stated, defendant cites 27 C. J. Subject: Statute of Frauds, 185. In section 109, which appears to be the only question on the page cited at all relevant to the issues herein, it is said:

"A promise to pay, or to become obligated for the payment of money which is not to be or cannot be fully performed within one year from the making thereof is within the statute as much as a promise or agreement to do any other act."

This text is supported by citation to *Wilson v. Ray,* 13 Ind. 1; *Kelley v. Thompson,* 175 Mass. 427 (56 N. E. 713); *Cabot v. Haskins,* 3 Pick. (Mass.) 83; and *Cantwell v. Johnson,* 236 Mo. 575 (139 S. W. 365).

*Wilson v. Ray,* supra, is an action upon oral contract. The only question therein affected by alleged fraud, is whether a fraudulent refusal to reduce the contract to writing has the effect of taking the case out of the statute of frauds and giving the oral agreement the validity of a written one. No such question is involved in the case at bar.

*Kelley v. Thompson,* supra, involved a set-off based upon an oral agreement not to be performed within one year and the same was held to be unenforceable because not in writing as required by the statute of frauds. No fraud is alleged.

*Cantwell v. Johnson,* supra, involves no question of alleged fraudulent representations that defendant would endorse the original and renewal notes, which was the agreement held therein to be within the statute of frauds. If it had been alleged that defendant promised to make such endorsements and, when he so promised, defendant had no intention of keeping that promise, but made the same under circumstances which render a false representation the basis of constructive fraud, then that case would be in point here, but no such allegations were made.

The question presented by defendant is based upon the first subdivision of section 9-909, Oregon Code 1930, which we quote:

"9-909. Agreement not in writing, when void— Statute of frauds.—In the following cases the agreement is void unless the same or some note or memorandum thereof, expressing the consideration, be in writing and subscribed by the party to be charged, or by his lawfully authorized agent; evidence, therefore, of the agreement shall not be received other than the writing, or secondary evidence of its contents, in the cases prescribed by law:

"1. An agreement that by its terms is not to be performed within a year from the making thereof."

■ We think that, in an action for deceit, this provision of the statute does not have the effect of rendering inadmissible testimony of an oral promise made with the fraudulent intent on the part of the promisor at the time the promise was made not to fulfill or perform the same.

One of the reasons leading to this conclusion is that the purpose of such oral testimony is not to establish an agreement, but to prove fraud. The gist of the fraud consists in the false representation of the existence of an intention which in truth and in fact has no existence: *Foster v. Dwire,* 51 N. D. 581 (199 N. W. 1017, 51 A. L. R. 21); *Rogers v. Harris,* 76 Okla. 215 (184 P. 459); *Planters Bank & Trust Co. v. Yelverton,* 185 N. C. 314 (117 S. E. 299); *Deyo v. Hudson,* 225 N. Y. 602 (122 N. E. 635), and other cases cited in 51 A. L. R. 66, note 15.

"To profess an intent to do or not to do, when the party intends the contrary, is as clear a case of misrepresentation and of fraud as could be made." *Herndon v. Durham & S. R. Co.,* 161 N. C. 650, 656 (77 S. E. 683, 685), 38 L. J. Harper, Law on Torts, § 220.

As stated by Bowen, L. J. in *Edgington v. Fitzmaurice*, Law Reports, 29 Chancery Division, 459:

"There must be a misstatement of an existing fact: but the state of a man's mind is as much a fact as the state of his digestion. It is true that it is very difficult to prove what the state of a man's mind at a particular time is, but if it can be ascertained it is as much a fact as anything else. A misrepresentation as to the state of a man's mind is, therefore, a misstatement of fact."

" '. . . When a promise is made with no intention of performance, and for the very purpose of accomplishing a fraud, it is a most apt and effectual means to that end, and the victim has a remedy by action or defense.' . . . Goodwin v. Horne, 60 N. H. 485." *Sharkey v. Burlingame Co.*, 131 Or. 185 (282 P. 546).

Defendant cites no case of fraud or deceit in which it is held that a promise to do something incapable of performance within one year, when such promise is made with the intention of not performing it at all, may not be proved by oral testimony. The cases which apply other provisions of the statute of frauds to prevent testimony of oral promises rest upon the absence of fraudulent intent or disavow the rule that the intention on the part of the promissor not to perform the promise constitutes fraud. *Gallager v. Brunel*, 6 Cow. (N. Y.) 346; *Davis v. Moore*, 9 Rich. Law (S. C.) 215; and *Dawe v. Morris*, 149 Mass. 188 (21 N. E. 313, 4 L. R. A. 158, 14 Am. St. Rep. 404), are such cases.

These cases have been superseded by later cases: *Deyo v. Hudson*, supra; *Palmetto Bank & T. Co. v. Grimsley*, 134 S. C. 493 (133 S. E. 437, 51 A. L. R. 42); *McCusker v. Geiger*, 195 Mass. 46 (80 N. E. 648), and other cases cited in annotation, Subject: Fraud Futurity, 51 A. L. R. 63, 64, note 14. See supplementary an-

notations on same subject, 68 A. L. R. 637, and 91 A. L. R. 1297.

The case of *Dung v. Parker*, 52 N. Y. 494, is not one where the court held that oral testimony of a misrepresentation upon which plaintiff relied could not be given. The holding there is that a contract within the statute of frauds can not be made the basis of an action for damages when by fraudulent representations of defendant the fulfillment of such oral contract was prevented. No such question is presented in the case at bar. *Dung v. Parker*, supra, was distinguished in *Benton v. Pratt*, 2 Wend. (N. Y.) 385 (20 Am. Dec. 623), and *Rice v. Manley*, 66 N. Y. 82 (23 Ann. Rep. 30), where it is held that, if the contract would have been voluntarily performed, damages could be recovered for fraudulently preventing its fulfillment.

*Linebarger v. Devine*, 47 Nev. 67 (214 P. 532, 217 P. 1101), is an action for damages for the breach of an oral agreement to insure a dwelling house and its contents. No claim of fraud appears in the case. Plaintiff insisted that part performance by defendant rendered the statute of frauds inapplicable.

*Haslock v. Ferguson*, 7 Ad. & El. Rep. 86, does not treat of the statute of frauds (29 Car 2 C 3) at all. The statute there involved is known as Lord Tenterden's Act (9 Geo. IV C 14 S 6), and was passed subsequent to the enactment of the statute of frauds. The American authorities are in conflict as to whether oral testimony may be introduced in cases where the character of the representation is such as to be within the terms of the Tenterden Act.

In the English case of *Pasley v. Freeman*, 3 T. R. 51, the provision in the statute of frauds regarding

contract of guaranty was held not to apply in an action of deceit based upon representation concerning the credit of a third person. To change this result, Lord Tenterden's Act was passed. Courts, which apply the provisions of this act to representations made with intent to defraud, assign the reason that because the act was passed in order to change the rule declared in *Pasley v. Freeman,* supra, in which case there was an intent to deceive, it can not rightfully be said that an exception should be made to the requirement of a writing merely because there is fraud. These authorities also note that the statute itself makes no such restriction and to imply one would be an unwarranted exercise of judicial legislation: *Haslock v. Ferguson,* supra; *Knight v. Rawlings,* 205 Mo. 412 (104 S. W. 38, 12 Ann. Cas. 325, 13 L. R. A. (N. S.) 212); *Carr v. Tatum,* 133 Cal. App. 274 (24 P. (2d) 195).

Courts holding contrary to the last named authorities base their decisions upon the ground that the statute was designed to protect persons, who in good faith make assurances respecting the credit of another, and that it should not be used to save harmless those who would cheat or mislead: *Coulter v. Clark,* 160 Ind. 311 (66 N. E. 739); *Vertrees v. Head & Matthews,* 138 Ky. 83 (127 S. W. 523); *Bush v. Sprague,* 51 Mich. 41 (16 N. W. 222).

Referring to 25 R. C. L., Statute of Frauds, p. 691, § 332, we find the following cases cited:

*Lamborn v. Watson,* 6 Har. & J. (Md.) 252 (14 Am. Dec. 275), which is not founded on deceit, misrepresentation or fraud practiced by the defendant, by which plaintiff was tricked into a false confidence and seduced into a contract by which he has lost his property. We quote the final paragraph of the opinion:

"But they [courts of law] can not entertain actions upon verbal contracts within the statute, on the ground of fraud, in refusing to perform them; if they could, it would be to permit a plaintiff, in the shape of an action on the contract, to recover in damages, not for the breach of the contract as such, but for a fraud subsequently conceived, and on which the action was not founded, (as is attempted in this case,) which would be to annul the statute in relation to such contract."

We have distinguished *Dawe v. Morris*, supra.

*Cerny v. Paxton & Gallagher Co.*, 78 Neb. 134 (110 N. W. 882, 10 L. R. A. (N. S.) 640), merely recognizes that, in cases cited, it has been held that a promise unenforceable under the statute of frauds, will not sustain an action of fraud and deceit; but does not apply the rule to the facts in the case. The cases cited are reviewed in this opinion.

*Seymour v. Cushway*, 100 Wis. 580 (76 N. W. 769, 69 Am. St. Rep. 957), was an equitable action to have a trust declared in certain standing timber. In the opinion, we find this statement:

"Here there appears to have been no fraud; nothing, in fact, but a mere breach of the verbal contract," etc.

*Welch v. Lawson*, 32 Miss. 170 (66 Am. Dec. 606), recognizes the rule that fraud may be shown by oral testimony.

*Kiser v. Richardson*, 91 Kan. 812 (139 P. 373, Ann. Cas. 1915D, 539), is one of the cases wherein a promise of future performance, even though when made it was not intended by the promissor to be fulfilled, does not have the effect of a misrepresentation upon which an action for deceit may be maintained.

In *Boyd v. Stone*, 11 Mass. 341, it is expressly stated, ". . . that the nonperformance of the

promise is the only circumstance from which fraud is to be inferred".

In an early New York case, the question was decided by an evenly divided court. In the prevailing opinion, we find this expression:

"* * * There is no middle ground of principle, between excluding evidence of fraudulent representations in all cases of the conveyance of land, or admitting them when they refer to the title. They all are or may be equally obnoxious to objections arising from the Statute of Frauds, and in each case the vendee can protect himself by appropriate covenants. The rule thus settled, affecting as it does the right of property, should be upheld unless its maintenance would conflict with established principles. No such conflict is perceived. On the contrary, it harmonizes with the law in relation to personal property, requires fair dealing from the vendor in each case, and permits the vendee, without a penalty upon his credulity, to trust to declarations of material facts within the knowledge of the other party. In a word, to treat with the vendor upon the presumption that he is an honest man." *Whitney v. Allaire,* 1 N. Y. 305.

In a later case, in the specially concurring opinion of Denio, J., we find this expression:

"The policy of allowing actions for alleged fraudulent parol representations as to the title to or incumbrances upon land sold is I think questionable. That it exposes parties to some of the evils which the statute of frauds was intended to prevent can not be doubted. But it is too late to entertain that question, for it is now well settled that such actions will lie." *Haight v. Hayt, et al.,* 19 N. Y. 464.

We quote from the case of *Corder v. O'Neill,* 176 Mo. 401 (75 S. W. 764):

"The substantial allegations of fraud, as charged in the petition, are in respect to the efforts of the de-

fendant to have the time expire in which the original contract was to be consummated in order to deprive plaintiff of his commission. While the failure to carry out the verbal agreement that on the 1st day of May, he (the defendant) would extend the time for the completion of the trade would not furnish the basis for a cause of action, yet it was competent and very material testimony, as tending to show how defendant was operating to prevent the consummation of the original contract according to its terms. This is not an action to enforce the verbal contract referred to in the petition, nor is it an action for the breach of it. We may concede, for the purposes of this case, that the verbal agreement, in respect to this mining lease, was not of such a character as could have been enforced, or for which an action would lie for the breach of it. Yet we take it that in this action, where all the facts are alleged, and it is charged in effect that the defendant fraudulently prevented the consummation of the original contract in order to deprive plaintiff of his commission, it was clearly competent to show his entire conduct, his or his agent's verbal agreement, which were calculated to deceive or mislead the contracting parties, and prevent them from complying with the first contract. The statute of frauds has no application to the cause of this action stated in the third count of the petition.

"If the facts are true as averred in the count in the petition upon which this case was tried, [the third count aforesaid] it is clear that they constitute a fraud upon the rights of the plaintiff for which he is entitled to recover damages."

In *Busick v. Van Ness*, 44 N. J. Eq. 82 (12 Atl. 609), we find this expression: "But a complainant may always prove a parol agreement of this kind for the purpose of showing fraud."

We also quote from *McNaughton v. Smith*, 136 Mich. 368 (99 N. W. 382):

"A good many of the requests to charge on the part of the defendant state the proposition that Mr.

Smith can not be held liable for the reason that his promise to take the stock was not in writing, and therefore was void under the statute of frauds. A good many pages of the briefs of counsel are devoted to arguing this proposition. We think this question is not involved in the case. Plaintiff does not seek to recover for a breach of the agreement, but claims the promises were made, in pursuance of a conspiracy and fraudulently, for the purpose of obtaining from him his stock.''

The same principle is recognized in the concurring opinion of Mr. Justice Letton in *Latson v. Buck*, 87 Neb. 16, 24 (126 N. W. 760).

■ No error was committed by allowing plaintiff to testify as to defendant's alleged promise to pay off the mortgage on the Collins View property.

As to defendant's second assignment, which asserts that error was committed by refusing defendant's motion for involuntary nonsuit, defendant cites *Wheelwright v. Vanderbilt*, 69 Or. 326 (138 P. 857), wherein a demurrer to the complaint was held to have been properly sustained because the complaint failed to disclose that defendant intended to induce plaintiff to incur the expense sought to be recovered, nor that plaintiff relied upon defendant's representations; *Cameron v. Edgemont Investment Co.*, 136 Or. 385 (299 P. 698), a suit in equity tried de novo on appeal; *McCabe v. Kelleher*, 90 Or. 45 (175 P. 608), wherein conflicting instructions were given to the jury; *Reimers v. Brennan*, 84 Or. 53 (164 P. 552), wherein the action of the trial court was approved in curtailing cross-examination, in admitting testimony contradicting a witness called by the party offering the contradictory testimony on the ground of surprise, and in giving an instruction to the effect that in order to constitute actionable fraud, among other things, the jury must

find that the plaintiff relied upon the false representations of the defendants, but wherein the propriety of a nonsuit is not suggested; and *Castleman v. Stryker*, 107 Or. 48 (213 P. 436).

In the case last cited, no damage was shown to have been sustained by defendants. Moreover, it was shown that plaintiff and defendant were dealing at arm's length. In the opinion in that case Mr. Justice RAND uses the following significant language:

"There are cases where the seller or purchaser may put upon the other the responsibility of informing him correctly as to the market value or as to any other fact known to him affecting the value of the property, and while, in such a case, the party is not bound to answer, yet, if he does answer, he is bound to speak the truth, and if his answer is untrue and prejudice results therefrom, it is fraud: Kerr on Fraud and Mistake, p. 55. But the case made here by the defendants is not that kind of a case, and it does not fall within that rule for the reasons above stated."

These cases, cited in support of defendant's second assignment, are all obviously distinguishable from the case at bar. Here, there is testimony tending to show that defendant intended to induce plaintiff to part with his Clackamas County mortgage, and that plaintiff relied upon defendant's declarations. The instant case is not a suit in equity, but an action at law; and we are foreclosed from weighing the evidence except to determine whether there is substantial testimony upon which to base the verdict of the jury. There is no complaint in the case at bar that inconsistent instructions were given, nor that the court failed to curtail cross-examination, refused to admit contradictory testimony or failed to instruct that reliance upon the alleged misrepresentation must be shown. Moreover,

plaintiff testified to the effect that he put upon defendant the responsibility of informing him correctly as to the market value of defendant's property.

Upon defendant's third assignment, wherein he imputes error in denying his motion for a directed verdict, defendant cites *Wilson v. Mills*, 91 Wash. 71 (157 P. 467), which was tried anew on appeal and in which the testimony was compared and held to be sufficient to warrant a reversal of the trial court's findings; *Hurford v. Harned*, 6 Or. 362, which is a suit in equity and was tried anew on appeal; *Dolph v. Lennon's, Inc.*, 109 Or. 336 (220 P. 161), which is a suit to reform a lease likewise tried anew on appeal.

*Bailey v. Frazier*, 62 Or. 142 (124 P. 643), is a suit to declare a deed, absolute in form, to be a mortgage to compel an accounting for the rents and profits collected by the defendant while in possession of the lands involved, and to compel a reconveyance to plaintiff. This case was also tried anew on appeal.

The distinction between the cases cited in support of the third assignment and the case at bar is that those cases are suits in equity while the instant case is an action at law. The appellate court may weigh, compare and analyze the testimony in a suit in equity and, where it is conflicting, the appellate court may very properly decide where the truth is; but, in an action at law, the appellate court may only determine whether there is substantial testimony in support of the verdict.

In support of his third assignment, defendant also cites 23 C. J. Subject, Exchange of Property, p. 199, which announces the well-known rule that,—

"A mere statement as to the value of property involved in an exchange is generally a matter of opinion and not ground for relief;" This statement, however is qualified thus,—

"But a representation as to the value of real property involved in an exchange made as a matter of fact and not as an expression of opinion may be fraudulent; and this rule has been held to apply . . . where for some . . . reason the parties have not equal means of knowledge."

In the case at bar, plaintiff testified that he had no knowledge of the value of defendant's property and that he so advised defendant and defendant told him that he could depend upon defendant's knowledge thereof.

■ As defendant's fourth assignment of error, he says that the trial court erred in volunteering the instruction ending as follows: "then you should find the defendant guilty of fraud in that particular".

The portion of the court's instruction, of which the above quoted language is the final phrase, advises the jury in effect that ordinarily fraud can only be predicated upon false representations of past or existing facts, but when one promises another to do something in the future as a consideration or inducement for the latter to part with his property, and makes the promise a medium of deception and at the time of making the promise the promissor has no present intention to perform, the existence of the intent at the time the promise was made not to perform it gives such promise the same effect as a false representation of a past or existing fact.

We quote the entire sentence of which the quoted phrase is a part:

"If therefore, you should find from the evidence in this case that the defendant promised to pay off the mortgage on the Collins View property, and that he had no intention of keeping that promise at the time that it was made, but made it as an inducement for the plaintiff to part with his property and as a medium for deception, then you should find the defendant guilty of fraud in that particular."

The defendant complains of the quoted phrase, because, as he says, "It sounds as an indictment for the practice of some black art." We do not so regard it. One may be guilty of an indiscretion or of bad taste, or of a false step, or of an inadventence, or of an oversight, without invading the mystic chambers of any black art. One may also be guilty of the common or garden variety of lying without even a semblance of any knowledge of or dominion over any art, black or otherwise. Of these things, any American jury are fully apprised. The learned and experienced trial judge, with his accustomed skill and tact, softened the language indicating the offense which would be committed by one who makes a promise without intending to keep or perform it from the participial form of "the short and ugly word" to the word which is descriptive of the gravamen of plaintiff's complaint. The instruction assumed nothing as to the facts whether the alleged promise was so or at all made, but left the determination of that question entirely to the jury. We think no error was thereby committed.

The defendant's fifth and final assignment attributes error in refusing defendant's requested instructions seventeen to nineteen inclusive.

Defendent's seventeenth request is as follows:

"You are instructed that: Plaintiff cannot recover if he received in exchange property equal in value."

"You are instructed that: Damages must be compensatory and not speculative."

"In plaintiff's action against grantor for damages for fraudulent representations, evidence of payments on rent received by plaintiff after discovery of alleged fraud may have some value on question of whether plaintiff's grievance is a mere afterthought growing out of dissatisfaction."

The court instructed the jury, among other things, that in order to warrant a recovery by plaintiff he must prove that he suffered injury and later gave the correct rule as to the measure of damages.

■ Both compensatory and punitive damages were claimed. It would have been misleading to have instructed the jury that "damages must be compensatory".

■■ The third sentence of the seventeenth request invades the province of the jury in implying when plaintiff discovered the alleged fraud. Moreover, the receipt of rent upon the property conveyed to plaintiff is in nowise inconsistent with plaintiff's affirmance of the contract and the institution of an action for damages.

■ Defendant's eighteenth request included a direct statement of fact, namely, that the relationship of principal and agent existed between plaintiff on the one hand and Mr. German and Mr. Ferguson on the other. This would have been an invasion of the province of the jury, and the request also contained a statement in effect that defendant did not owe the duty to plaintiff to disclose to him any facts within his knowledge. If plaintiff's version is correct, namely, that he had no knowledge of the value of the Collins View property,

that he so advised defendant, and that he would rely entirely upon defendant's statements about it, defendant, if he spoke at all on the subject, owed plaintiff the same duty that an agent would owe his principal, namely, the duty of telling the truth about it.

Defendant's nineteenth request, if given, would have told the jury that there was no evidence in the case of any fiduciary relation existing between plaintiff and defendant. What has just been said in discussing defendant's eighteenth request refutes that statement in the nineteenth request. Plaintiff's testimony tends to disclose the existence of a fiduciary relation between the parties hereto.

No error was committed in failing to give said requested instructions.

On oral argument, defendant suggested that the record failed to establish plaintiff's claim that defendant had made all of the declarations or representations alleged, and that, if any one of such representations had not been proven, plaintiff's case would fail and judgment should be rendered for defendant. The one upon which defendant claims that no proof was offered is the allegation that defendant represented that the tenant occupying the premises had made defendant a recent offer of $2,200. *Hockensmith v. Winton*, 11 Ala. App. 670 (66 So. 954), seems to support such a view. All of the other authorities on that point, which have come to our attention, are to the contrary: *Niebels v. Howland*, 97 Minn. 209 (106 N. W. 337); *Edward Malley Co. v. Button*, 77 Conn. 571 (60 Atl. 125); *Yates v. Alden*, 41 Barb. (N. Y.) 172; and cases cited in notes 35 and 36, Sec. 166, P. 42 of Vol. 27 C. J. Subject, Fraud.

■ We are not called upon to indicate how we would have decided the factual issues, but we hold that the record supports the verdict because there is testimony tending to establish the material averments of plaintiff's second amended complaint; and this testimony, when viewed most favorably to plaintiff, is of sufficient cogency to meet the standard of proof required to establish fraud. We realize that the testimony just mentioned is contradicted. In such a state of the record, the verdict of the jury is controlling.

■ Plaintiff asks us to impose the statutory penalty upon defendant because, as plaintiff claims, it does not appear that there was probable cause for taking the appeal. (Section 7-514, Oregon Code 1930.) This we decline to do.

The judgment of the circuit court is affirmed.

CAMPBELL, C. J., and BELT, J., concur.

ROSSMAN, J., concurring in part.

———

ROSSMAN, J. I dissent from the portion of the opinion of the majority concerning the statute of frauds. In my opinion, the record in this action presents no occasion for considering or applying that statute. The plaintiff does not claim that the defendant promised to discharge the $500 mortgage on the Collins View property a year or more after the transaction was consummated, but swore that the defendant promised to discharge it at once. The note was payable in monthly installments of $25. He, the defendant, was the maker of the note and the signer of the mortgage. The answer admits that the defendant bound himself at the time of the trade "to pay the past due installments". As a

witness, defendant admitted that he paid two $25 installments.

After testifying that the defendant informed him that the Collins View property was subject to a $500 mortgage, the plaintiff swore that he told the defendant he would not consider any property encumbered with a mortgage. He was then asked, "What did he say?" and answered, "He said he would pay off the mortgage." Here defendant's counsel interposed objection "to the introduction of testimony of that sort because of the statute of frauds," and then read the portion of the statute which concerns "an agreement that by its terms is not to be performed within a year from the making thereof". After the objection had been overruled, plaintiff's counsel, again referring to the $500 mortgage, asked, "What did Mr. Thielemann have to say about that?" and received the reply, "He said he would give it to me free and clear, he would pay off the mortgage." This clearly indicates that the mortgage was to be discharged at once. Some days after this conference plaintiff and defendant made an inspection of the property. Plaintiff's attitude at that time towards the proposed exchange of his mortgage for the defendant's property was thus described by him when he was testifying: "I mentioned to him that I would be willing to make the exchange if it was not for that $500 mortgage." He was then asked, "What did he (defendant) say?" and replied, "He said that I would have nothing to do with that mortgage, he would pay it off as soon as the man returned,—the man that held the mortgage was out of town but as soon as he returned, why, he would pay off the mortgage." Plaintiff testified that, having received this assurance, he agreed to the proposed exchange. A day or two later

he and the defendant went to the defendant's attorney who prepared the necessary papers assigning to the defendant plaintiff's mortgage and conveying to the plaintiff the Collins View tract. The deed to the plaintiff was then recorded. The plaintiff swore that after the county clerk had returned the deed to him he noticed for the first time that it stated the Collins View property was subject to the $500 mortgage. He testified that he thereupon called upon the defendant, inquiring why the mortgage had not been discharged, and was assured "that he (defendant) would tend to it not later than a week or so". After calling twice more he was told by the defendant that he never intended to discharge the mortgage. There is nothing in the record which indicates that the mortgage could not have been discharged or released at once as promised. Thus, it will be observed that the plaintiff is not relying upon a promise to make payment after a year's time had passed, but is relying upon a promise to discharge the mortgage at once. It seems clear that the situation presents no occasion for discussing or applying the statute of frauds: *Bickel v. Wessinger,* 58 Or. 98 (113 P. 34); *Southwell v. Beezley,* 5 Or. 143; *Hedges v. Strong,* 3 Or. 18; and 25 R. C. L., p. 454, § 29.

I also dissent from the statement made in the opinion of the majority that in an action for deceit the provision of the statute of frauds which is there quoted does not render inadmissible testimony of an oral promise to be performed later than one year. If the promise upon which the plaintiff relies was within the statute of frauds, he could no more employ it as the basis of recovering damages in an action of deceit than in an action directly upon the promise itself. The purpose of the statute is to exclude, in actions brought directly or

indirectly upon oral promise, testimony which seeks to establish the promise./The original statute of frauds (29 Car. II) stated that its purpose was "the prevention of Frauds and Perjuryes". This purpose would. be. defeated if the plaintiff, finding himself unable to maintain an action directly upon the promise, could resort to an action of deceit in which he could allege the selfsame promise, accompanied with an averment that it was made without any intention of fulfilling it. The authorities are agreed that the statute prohibits not only an action upon the oral contract but also actions indirectly upon it. From 25 R. C. L., Statute of Frauds, p. 691, § 332, the following is quoted:

"An action for damages for its breach is in effect one for its enforcement and cannot be maintained; and this is, as a general rule, held true though there has been such a part performance by the plaintiff as would authorize a court of equity to decree specific performance by the other party. So an action for damages cannot be maintained on the ground of fraud in refusing to perform the contract, even though the defendant at the time of the making of the oral contract may have had no intention of performing it."

In addition to the authorities cited in the text, see also *Linebarger v. Devine,* 47 Nev. 67 (214 P. 532, 217 P. 1101), and those which will now be reviewed.

In *Dung v. Parker,* 52 N. Y. 494, the defendant, after fraudulently representing to the plaintiff that he had authority, as agent, to lease a store room, gave the plaintiff an oral two-year lease upon the premises. The plaintiff then purchased fixtures. The action was brought to recover the resulting damages. The New York statute provided that contracts for the leasing of lands for terms of more than one year were void unless in writing. In reversing a judgment in plaintiff's favor, the court declared:

"A contract void by the statute is void for all purposes. It confers no right and creates no obligation. as between the parties to it; and no claim can be founded upon it as against third persons. It cannot be enforced directly or indirectly. The plain intent of the statute is that no person shall be subjected to any liability upon an agreement. * * * Whatever the form of the action at law may be, if the proof of a promise or contract, void by the statute, is essential to maintain it, there can be no recovery. * * * Nor is the intent with which the defendant enters into a contract, void by the statute, which he subsequently refuses to perform, material in determining his liability upon it. Although he never intended to perform it, and expected that the other party would be subjected to inconvenience and loss by relying upon it, his liability is not changed. That a party was ignorant of the law, or that he confided in the promise of another, and acted upon it to his disadvantage, has never been held to be an answer to the statute. There is no contract from the violation of which damages, in a legal sense, can arise, where the agreement proved is within the statute. (Cagger v. Lansing, 43 N. Y. 550; Levy v. Brush, 45 id., 589.) There may be moral wrong in refusing to perform such a contract; but the policy of the statute was protection against false claims, supported by perjury; and the hardship of a particular case should not lead to a decision which would disturb the principle upon which the statute is founded."

See to same effect *Rice v. Manley,* 2 Hun. (N. Y.) 492.

In *Boyd v. Stone,* 11 Mass. 341, the action was upon the case for deceit, and the facts stated in the declaration were the following: Plaintiff made his note to the defendants in the sum of $485.62, and at the same time delivered to them, as security, a deed to a farm of the value of $3,000. Simultaneously with the delivery of the deed, it was agreed that the parties, at a future date, should execute a written obligation of

defeasance, specifying the conditions upon which the farm should be reconveyed. The defendants, intending to defraud the plaintiff, did not keep their agreement to execute the defeasance instrument. In sustaining a demurrer to this pleading, based upon the statute of frauds, Chief Justice Parker spoke as follows:

"By the ancient common law, before the statute of 29 Car. 2, c. 3, commonly called the statute of frauds and perjuries, an action of assumpsit or of deceit might have been maintained upon these facts. There is a distinct promise to do something valuable to the plaintiff, and there is a sufficient consideration. That statute, however, was enacted with a view to prevent contracts concerning real estate from being enforced, or damages recovered for the breach of such contracts, unless proved by written evidence; it being found inconvenient to depend upon the memory or the integrity of witness in disputes relating to real estate. * * * If this declaration could be maintained, it would follow that, in all cases where a party had made a verbal agreement respecting lands, &c., by choosing his form of action, he might avoid the operation of the statute. It is better that a man, who has been so grossly negligent of his affairs as to rely upon the honor of the party with whom he deals when the laws of his country have always declared that he shall have no remedy for the breach of such an engagement, should suffer, than that the rules of property should fluctuate according to the notions of different judges, as to the merits of each particular case."

*Haslock v. Fergusson*, 7 Ad. & El. 86, was an action of assumpsit for money had and received. The plaintiff claimed that, upon the representation of the defendant concerning the credit of a Mrs. Barnes, he sold her, upon credit, merchandise of the value of 443 pounds. Mrs. Barnes was heavily indebted to the defendant, and sold the goods which the plaintiff had delivered to her, employing a portion of the proceeds for the

liquidation of her debt to the defendant. The action under review was brought to recover the sum so paid. The statute (9 G. 4. c. 14. s. 6.) provided that no action should be brought "whereby to charge any person upon or by reason of any representation" unless made in writing. Lord Chief Justice Denman, in delivering the opinion of the court, which held evidence of the representation inadmissible, spoke as follows:

"It is suggested, on the part of the plaintiff, that the representation was fraudulent, and that the defendant caused it to be made for the purpose of fraud. The case does not appear to us to raise any doubt in point of law. The question is, whether the action is brought, according to the terms of the statute, 'to charge any person upon or by reason of any representation or assurance made or given concerning or relating to the character, conduct, credit, ability, trade, or dealings of any other person?' These words are followed by a clause unhappily expressed, and which I need not go into. Such then being the question, the plaintiff says that the action is not upon the representation, but for money had and received; that the representation is a mere medium of proof, the case being that a fraud was committed, in the course of which this representation was made, and that the produce of the goods obtained by such fraud belongs to the plaintiff. But the only fact on which the case of fraud rested at the time of offering the evidence was, that the defendant had authorized Hobson to give Mrs. Barnes a fair character. We think that the representation made under those circumstances is within the very terms of the sixth section of stat. 9 G. 4. c. 14., and therefore could not be received in evidence, unless put into writing."

I concur in all other parts of the decision.